M. O. and Ethel Finks v. Commissioner.
Finks v. Commissioner
Docket Nos. 14764, 14765 and 14766.
United States Tax Court
1948 Tax Ct. Memo LEXIS 42; 7 T.C.M. (CCH) 834; T.C.M. (RIA) 48236; November 15, 1948
*42 Samuel S. DuHamel, Esq., for the petitioners. Jackson L. Boughner, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, duly consolidated, involve income tax. Deficiencies, and penalties, were determined as follows: Year
Deficiency
Penalty
1943
$5,991.97
$299.60
1944
5,045.79
252.29
1945
3,251.17
162.56
The petitions assigned as error only disallowance of certain deductions, set forth in detail. No deductions claimed in returns were by the Commissioner disallowed, but trial was had on the question whether the Commissioner erred in increasing reported income. The returns involved were filed with the collector for the eighth district of Illinois. Findings of Fact M. O. Finks (sometimes hereinafter referred to as the petitioner because of the fact that his wife had no separate income) and Ethel Finks are husband and wife residing at Shelbyville, Illinois. Prior to the taxable years he had been in the garage business, wholesale gas business, and accessory business. He owns about 529 acres of land, all adjoining, 400 acres in one body, 30 acres in another, and 99 acres of pasture land. *43 The 400 acres is improved with three barns, double granary, granaries built in the barns, hay shed, chicken house, and hog houses. In addition the farms have two large houses containing 15 and 10 rooms, respectively. The 400 acre farm has 365 acres under hog tight fence with cross fence, and the 99 acres is entirely fenced, with cross fences, while the 30 acres has no fence. There are 100,000 tile on the farms. In addition to the farm property, the petitioner in 1942 owned a home, a cheese factory building, and two other small residential properties. M. O. Finks made deposits in the Shelby Loan & Trust Company and in the Shelby County State Bank as follows: Shelby
Shelby
Loan &
County
Year
Trust Co.
State Bank
Total
1942
$57,460.87
$4,819.98
$62,280.85
1943
40,105.82
2,405.30
42,511.12
1944
34,067.69
938.29
35,005.98
1945
24,815.82
24,815.82
The above bank deposits included bank loans as follows: In 1942, $16,250; in 1943, $10,350; and in 1944, $6,600. The deposits in 1945 included no borrowed money. The Shelby County State Bank account was closed April 15, 1944, and no checks were written on it, or deposits made, in 1945. *44 The petitioners' returns for 1942 to 1945, inclusive, reported income, entirely from farms and rentals, as follows: Farm Income
1942
1943
1944
1945
Sale of live stock raised
$ 1,460.00
$ 839.90
$ 442.87
Sale of produce raised
$ 7,307.19
7,309.49
8,721.59
11,992.11
Sale of live stock purchased
9,116.49
510.00
1,737.95
Cost of live stock purchased
(5,352.38)
(250.00)
(1,458.40)
Profit on sale of live stock purchased
3,764.11
260.00
279.55
Other farm income
201.00
2,269.18
117.81
772.48
Gross profit from farm
$11,272.30
$11,298.67
$9,958.85
$13,207.46
Farm expenses
(8,616.89)
(8,594.97)
(6,504.96)
(6,393.07)
Farm depreciation
(1,202.98)
(1,283.28)
(1,578.33)
(1,629.53)
Net farm profit
$ 1,452.43
$ 1,420.42
$1,875.56
$ 5,184.86
Rental Income
Gross rents received
$ 1,618.00
$ 2,420.00
$2,239.50
$ 2,855.00
Depreciation
(264.90)
(386.15)
(424.50)
( 420.73)
Repairs, etc.
(121.88)
(325.50)
(750.42)
(1,225.60)
Other expenses
( 72.97)
(439.50)
( 124.90)
Taxes
(260.00)
Net rental income
$ 1,158.25
$ 1,448.35
$ 625.08
$ 1,083.77
Petitioners, using the above figures and taking into *45 consideration gain or loss on sale of real estate, contributions, taxes paid, and standard deduction, arrived at and reported net income and taxes due as follows: 1942
1943
1944
1945
Farm income
$ 1,452.43
$ 1,420.42
$1,875.56
$ 5,184.86
Rental income
1,158.25
1,448.35
625.08
1,083.77
Total
$ 2,610.68
$ 2,868.77
$2,500.64
$ 6,268.63
Gain on sale of real estate
153.25
Loss on sale of real estate
(1,433.36)
Contributions
( 110.00)
(120.00)
Taxes
(100.50)
Standard deduction
(500.00)
Net income
$ 1,067.32
$ 2,648.27
$2,500.64
$ 5,921.88
Tax shown due
$ 316.88
$ 305.00
$ 1,242.35 The item of $1,433.36 loss on sale of real estate in 1942 is explained as upon sale of real estate costing $8,000 in 1939 for $6,140, with depreciation of $426.64. With the exception of $1,000 for a lot, this is the only sale of real estate reported in that year. Petitioner deposited in bank, on January 29, 1942, $7,350, received on the sale of a building. No sale of real estate was reported in 1941. The Commissioner, in the deficiency notices, computed petitioners' income as follows: 1942
Gross deposits, Shelby Loan & Trust Co.
$57,460.87
Less: Borrowed money deposited
$16,250.00
Capital deposited: Cattle (Cost of that sold during year per 1040F)
4,148.82
Hogs (Cost of that sold during year per 1040F)
1,203.56
Land (Cost of that sold during year per 1040F)
1,000.00
Bldg. (Cost of that sold during year per 1040F)
6,140.00
28,742.38
Balance of deposits considered income
$28,718.49
Less: Expenses claimed per 1040F
$ 8,616.89
Depreciation claimed per 1040F
1,202.98
Rental expense and depreciation per return
459.75
Capital loss limitation
1,000.00
11,279.62
Net income
$17,438.87
1943
Bank balance 1-1-43
$ 598.20
Bank balance 12-31-43
837.80
Increase considered income
$ 239.60
Indebtedness to Shelby Loan & Trust Co. decreased during year
3,375.00
Mortgage on farm paid to Federal Farm Loan Admin.
8,210.35
Personal expenses: Paid by check
$ 1,650.92
Paid by cash
849.08
2,500.00
Bonds purchased
1,360.00
Land roller purchased
33.00
Rake purchased
135.00
Cultivator purchased
115.00
Land improvements
342.00
Total considered as income
$16,309.95
Less: Depreciation on farm per 1040F
$ 1,283.28
Depreciation on rental property per return
386.15
Taxes per return
100.50
Contributions per return
120.00
1,889.93
Net income
$14,420.02
1944
Total deposits at Shelby Loan & Trust Co.
$34,067.69
Less: Borrowed monies deposited
$ 6,100.00
Return of capital: Cost of cattle sold during year per 1040F
1,458.40
7,558.40
Bank deposits considered income
$26,509.29
Expenses per 1040F
$ 6,504.96
Depreciation per 1040F
1,578.33
Depreciation on rental property per return
424.50
Repairs on rental property per return
750.42
Other expenses on rental property per return
439.50
9,697.71
Net income
$16,811.58
1945
Total deposits at Shelby Loan & Trust Co. considered income
$24,855.82
Less: Farm expenses per 1040F
$ 6,393.07
Depreciation on farm per 1040F
1,629.53
Depreciation on rental property per return
420.73
Repairs on rental property per return
1,225.60
Other expenses on rental property per return
124.90
9,793.83
Net income
$15,061.99
*46 In 1942 petitioner bought a farm called the Lumpp Farm, for which he paid $21,000. He borrowed $12,000, placed it in the bank and paid it on the Lumpp Farm. He bought no other farm or business building during the taxable years. In 1942 the petitioner borrowed $1,500 and in 1943, $1,200, from a Mrs. Steward. The two loans were paid back in March 1944. Petitioner had a safe deposit box in each of two banks, the Shelby County State Bank and the Shelby Loan & Trust Company. He kept papers of value and sometimes money in his safe deposit boxes, and kept a record of money that he had in the deposit boxes. His entire farm income for the period 1942 through 1945 was deposited either in the bank or put in his safety deposit box. He brought to trial no record or memoranda concerning the cash and securities held in his deposit boxes or lock boxes of any kind, and had with him no record of the cash and securities maintained in his safety deposit boxes during the years 1938 to 1945. He made deposits from time to time in both of the banks above named, at times making redeposits. He sometimes cashed checks for acquaintances. When deposits were made deposit slips were made out by the bank. *47 The bank officials, in 1948, made copies from the original deposit slips and gave the deposit slips to M. O. Finks who, about March or April 1948, made notations on the deposit slips in a different handwriting from that originally on the deposit slips, as indication as to the nature of the deposit. He did not own any stocks of any companies during the years 1942 to 1945. Petitioner's income tax returns for the taxable years were prepared by one Bonser of Shelbyville, who was engaged in the insurance business, has an income tax service, and has done adjusting work for an insurance company on crop hail losses. He insured petitioner's crops for hail insurance for from $12,000 to $16,000 in each of the taxable years. In selling crop hail insurance he took approximate yield times estimated price to arrive at the amount of insurance. In making the returns he went to the petitioner's home and went through his cancelled checks, bills and receipts, and income and property work sheets. Petitioner furnished him receipts from live stock associations and grain marketing associations. His estimate of the yields on petitioner's 400 acre farm was as follows: Corn 40 to 55 bushels per acre; oats *48 30 bushels; beans 20 to 22 bushels. He had insured the crops on the petitioner's farm for four or five years, insuring them at real value. When Bonser prepared petitioner's returns he was shown a book, not exactly a ledger but a sort of day book, with a few items in it. It was not complete. Petitioner's ledger was not brought to trial. He had one in Shelbyville at time of trial. Petitioner kept no journal. Journals, ledgers, records of contents of lock boxes, and income tax records of all kinds were subpoenaed. Bonser did not make any effort to determine whether the petitioner's income was all deposited in his bank or to verify the income against deposit slips. When an internal revenue agent reexamined the petitioner's matters for the taxable years (as a result of a protest filed after income was set up on bank deposits, with all claimed deductions and depreciation allowed, and eliminating borrowed money redeposited) he was told that there were no books of original entry. He was furnished checks, to some of which invoices were stapled, and duplicate deposit slips. He was told that some papers had been taken to the Farm Bureau man for the preparation of returns In the absence of books *49 and records, he went to the bank deposits and checks to ascertain income. For the year 1943 he prepared something in the nature of combination of net worth and cash receipts and disbursements method because the records were not adequate. Bank deposits had been used for 1942 by another deputy and the same procedure was followed, in the absence of records, in the making of the reexamination. He examined bank deposit slips over $200, taking the view that under $200 they were by nature income. An "expense distribution Journal" was shown him but on attempting to verify the various expenses with those deducted on the income tax returns, he was unable to do so, finding discrepancies, such as, for 1942, between $3,865.23 farming and renting expense, on the book, and $8,811.74 on the return. That journal contained many entries based on conclusions by the accountant who prepared it. The revenue agent twice tried to contact Bonser. He could not tie checks which he examined up with expenses on the return. In the absence of records, bank records were used for calculation of income. The revenue agent, from the notations made on deposit slips by M. O. Finks and information from him, made a summary *50 of the designations by the petitioner of the amounts shown on deposit slips, as follows: 1942
1943
1944
1945
Farm income
$19,442.32
$ 8,208.88
$11,550.77
$14,705.92
Bonds
2,450.00
7,533.99
1,150.00
Loans
17,310.00
14,188.86
11,070.51
2,567.33
Transfers
740.57
1,142.24
1,120.41
1,312.00
Total identified
$39,942.89
$31,073.97
$24,891.69
$18,585.25
Total deposit slips
50,135.35
32,587.82
25,610.40
20,051.50 The agent asked the petitioner about bonds and was told that a certain office had the data on that. On inquiry at that office he was told that Mr. Finks "would testify in connection with the bonds." The first United States Savings Bonds issued to the petitioners, or either of them, after 1934, were in May 1942. During the year 1942 a total of $200 was issued to them, or one of them. In 1943 the amount issued to them, or one of them, was $1,800; in 1944 the amount was $3,025; and in 1945 was $2,500. All of the above bonds were paid in April 1946. The petitioner owned no bonds except United States Savings Bonds from 1942 to 1945. Opinion The record in this case is not at all satisfactory. The petitioner, although doing *51 a large amount of business on his farms and some other property, kept, in effect, no records except deposit slips and checks, with some receipts such as from elevators for grain sold. Finding large amounts of money deposited, and being unable to ascertain from any satisfactory records the amount of the petitioner's income, the revenue agents used bank deposits. They did not, however, include the deposits, later shown upon trial, in the Shelby County State Bank in the amount of several thousand dollars. All deductions claimed were allowed and income determined accordingly. At trial, respondent's counsel stated, if the petitioner would substantiate the deductions shown on the returns, additional deductions shown would not be objected to. Nevertheless, the proof offered is, in our view, altogether unsatisfactory to show what petitioner's real income was in the taxable years. Under all of the circumstances before us, the respondent was justified in using bank deposits, particularly as loans were eliminated and all deductions allowed. In fact, the deposits in Shelby County State Bank in the amount of approximately $8,000 were not included in income and the respondent does not now ask inclusion *52 thereof. , fully justifies, under the facts here, the use of the bank deposits. The petitioner's proof is far from convincing. In partial explanation of his deposits he testified in detail and at length to the effect that he owned United States Savings Bonds, that he owned no other type of bonds, that he would say it was $20,000 "Well, all you could buy * * * I bought what I could," making the maximum number of purchases that he could in each year and that he would say that he had $28,000 or $30,000 worth of bonds; that they were in his safe deposit box at the beginning of 1942. And the petitioner on deposit slips for the years 1942-1944, inclusive, designated a total of $11,133.99 deposits as bonds. Yet the records of the Treasury Department placed in evidence showed that from 1935 to 1945, inclusive, neither petitioner purchased any bonds until May 1942, and that the total purchased from that date on was $200 in 1942, $1,800 in 1943, $3,025 in 1944, a total of $5,025; and $2,500 in 1945. Again the petitioner's return for 1942 reported a sale of a building for a gross price of $6,140, whereas his testimony is that he received *53 for the sale of a building $7,350 and that he sold only one business building in 1942-1945, inclusive. The checks and deposit slips placed in evidence explain little. All deductions claimed had been allowed. The explanations placed upon the deposit slips were placed there by the petitioner in 1948 long after the deposits and he admitted that he could have made mistakes, as to his notations on deposits; and that some income could have gone into the box. Though petitioner said that he had records of the contents of his deposit boxes none were produced and such ledger as he kept was not produced at trial although all books records pertaining to income tax were subpoenaed. Under all of the circumstances before us in this case we are unable to say that any reasonable showing is made to demonstrate either that the use of bank deposits by the Commissioner in determining income was not justified, or was arbitrary, or that they do not reasonably reflect income. The petitioner was a business man. He testified that he had been in different businesses - in the garage business, wholesale gas business, and accessory business. His failure to keep records or to present at trial any records reasonably *54 explanatory of his income can not fail to be significant. For the year 1942 gross farm income, before deduction of expenses, was reported in the amount of $16,624.68; yet bank deposit slips totalling $19,442.32 were by petitioner designated as farm income in that year. This plainly indicates failure to report all farm income. Deposits in the Shelby Loan & Trust Company claimed to be transfers between banks do not demonstrate error by the Commissioner, since the deposits in the Shelby County State Bank are not included in income and the nature of the deposits in the latter are not explained, as to whether they represent income. For 1945 bank transfers of $1,312 to Shelby Loan & Trust Company are claimed as explanation of deposits, despite the fact that no checks were written on Shelby County State Bank in that year, and there was no account therein in that year. No corroboration was furnished as to checks written for acquaintances. For 1945 deposits were explained as loans to the extent of $2,567.33, yet no notes appear in the records for that year. Upon the whole report we conclude and hold that error has not been shown in the determination of income by the Commissioner. The *55 same considerations cause affirmation of the 5 per cent negligence penalties imposed. Negligence in the keeping of records for income tax purposes is apparent under the facts laid before us. Decisions will be entered under Rule 50.